[No. 7763.]

## CORYELL ET AL. V. FAWCETT.

PRACTICE IN THE SUPREME COURT—*Writ of Error Sued Out Collusively*, and under a precedent agreement that the defendant in error shall confess errors, the controversy of the parties being adjusted, and the real purpose being to vacate an allowance to the attorneys for their fees, will be dismissed. Such proceeding is a fraud upon the attorneys and an imposition upon the court.

*Error to Garfield District Court.*—Hon. CHARLES McCALL, Judge.

Mr. E. L. CLOVER, for plaintiffs in error.

Mr. H. J. O'BRYAN, for defendant in error.

*PER CURIAM:*

Through her attorneys, D. M. Campbell and S. J. De Lan, the defendant in error, Miss Pauline M. Fawcett, claiming to be a stockholder in the Garfield County Coal and Fuel Company, prosecuted an action in the district court of Garfied county against Perry C. Coryell and his wife, Minnie B. Coryell, and the coal company. The Coryells were the officers and a majority of the board of directors of the company, and the holders of all the capital stock, unless Miss Fawcett owned five thousand shares which she claimed. In the complaint it was alleged that she owned these shares. Her ownership thereof was admitted by the defendants in their answer and throughout the trial. The certificate therefor was not produced, and the company had no stock ledger or other book to show who were the owners of the stock. The result of the action in the district court was a decree that Mrs. Coryell convey to the coal company certain lands which she had taken in her own name, and which the court found belonged to the company; that she pay to the company $20,474 in money; that Perry C. Coryell pay to the company the sum of $1,000,

and that the company pay to D. M. Campbell and S. J. De Lan, as attorneys' fees for them as the plaintiff's attorneys, the sum of $2,500.

A receiver was appointed to take charge of the business and property of the coal company, who was empowered to do all things that he might lawfully do for the best interests of the company and those interested, and to sue for and collect all money and property due the company, and make distribution thereof according to the respective rights of the stockholders, and in such manner as might be approved by the court.

After judgment, the Coryells applied for a new trial. In support of this application, Mr. Coryell, in an affidavit set forth a chain of facts and circumstances which be began vaguely to remember after the trial, and whereby he attempted to show that Miss Fawcett did not in fact own any stock in the company, but that the stock she had owned, and which was treated as hers at the trial, had been turned over to Mrs. Coryell several years before for a certain consideration, since which time the Coryells had been the owners of all the stock of the company, and the corporation had practically gone out of business. Miss Fawcett denied this in a counter-affidavit. The motion for a new trial was overruled in August, 1911. On March 14, 1912, a transcript of the record was filed in this court, and the cause docketed on error with the coal company and the two Coryells as plaintiffs in error, and Miss Fawcett as defendant in error. On the same day and simultaneous with the filing of the transcript, there was filed on behalf of Miss Fawcett, the defendant in error, what purports to be a confession of errors, wherein, after confessing that the court below committed prejudicial error in many particulars, Miss Fawcett empowered an attorney other than Campbell and De Lan to appear for her, file the confession of errors, consent that the judgment be reversed and annulled, and that a final judgment be entered in this court dismissing the complaint.

When the filing of this confession of errors was brought
to its attention, this court, of its own motion, appointed a
commissioner to take testimony with reference to the prepara-
tion and filing thereof.   The parties, together with Campbell
and De Lan, appeared before this commissioner.   Testimony
was taken, and the same together with the certificate of the
commissioner relative thereto were filed in this court.   It ap-
pears from the testimony of Miss Fawcett, Mr. Coryell and
others, taken before the commissioner, that after the motion
for a new trial was denied Miss Fawcett became convinced
that she was not the owner of any stock in the company, and
that the stock which she had claimed had been by her turned
over to Mrs. Coryell for a consideration several years before
she began the action.   When she became convinced of this
she disclaimed any interest in the company, or in the litiga-
tion or judgment, and desired, as she expressed it, "to quit."
Thereupon, the Coryells and Miss Fawcett had various meet-
ings, conversations and negotiations, the result of which was
that the certificate of stock theretofore claimed by Miss Faw-
cett was found and turned over to the Coryells, and Mr. Cory-
ell had his attorney prepare the confession of errors, which,
if we understand her testimony aright, was outlined by Miss
Fawcett.   The confession was prepared and sent to Mr. Cory-
ell, who in turn sent it to Miss Fawcett.   The latter signed
and acknowledged it before a notary public, and transmitted
it to an attorney, authorizing and directing him to file it and
to consent to the reversal of the judgment and the dismissal
of the complaint as above stated.   Mr. Coryell, at the request
of Miss Fawcett, had seen this attorney, and the latter con-
sented to act for her upon her assurance that her other attor-
neys had been discharged.   Campbell and De Lan were not
notified or consulted with reference to the confession of errors,
and knew nothing concerning it until they were notified by
order of this court.   All that was said to them with reference
to settling the matters was in September, 1911, when Miss
Fawcett sent to Campbell an alleged proposition of compro-

mise or settlement from Coryell, which was returned by
Campbell to Miss Fawcett, with a notation thereon that there
was nothing to compromise; that her rights were fully pro-
tected by the judgment and there was nothing to do but to
execute it.  When asked by Campbell if she remembered send-
ing a proposition of compromise, Miss Fawcett said : "I do.
You turned it down as a yellow dog.  You told me to go no
further.  I got your letter.  I know what you said.  I gave
you a fair, square chance.  You would not take it.  I was go-
ing into bankruptcy and I wasn't going, and I quit.  Now,
there you have got it."  After that Campbell and De Lan
seemed to have been studiously ignored.  It was also made to
appear to this court that shortly before the transcript and con-
fession of errors were filed, the receiver, at the direction of
the district court, was proceeding to sell some of the property
of the company to pay the costs of the trial and the attor
neys' fees allowed to Campbell and De Lan.  While the Cory-
ells and Miss Fawcett were careful in their testimony to avoid
saying that their matters had been settled prior to the filing
of the transcript and confession of errors, it is very plain from
the testimony and the confession of errors that they had
reached an understanding and agreement to wipe out the
judgment of the district court, and to dismiss the action, leav-
ing the Coryells the owners of and in possession of all the
capital stock of the company, and its officers and directors.
Before the cause was docketed in this court, Miss Fawcett had
disclaimed all interest in the company and the judgment, and
declared that she never had any cause of action against the
defendant.  She no longer claimed to be a stockholder.  The
stock that she had claimed had been turned over to the Cory-
ells, and they were, without dispute, the owners of and in
possession of all the capital stock, and were the officers and
directors.  There remained no longer any real or live con-
troversy between the parties to the action.  So far as the
rights of the Coryells, the company and Miss Fawcett are
concerned, their controversy was settled, and the matters over

which the litigation had been waged adjusted. To effectually
wipe out the litigation and the judgment, it is plain that the
parties further agreed that the case should be lodged in this
court in the form of a writ of error, together with a confes-
sion of errors, so that a reversal of the judgment and a dis-
missal of the complaint should be at once secured. It was not
necessary to bring the case here to effectuate the settlement.
In so far as the rights of the parties are concerned, that could
have been accomplished in the district court. Mrs. Coryell
was the owner of all the capital stock, except possibly two
shares held by Perry C. Coryell and Perry C. Coryell, Jr.,
who with Mrs. Coryell were directors, and the company had
no debts. The only reason for the attempted proceeding in
this court that the parties could have had was the anticipation
that a reversal of the judgment and a dismissal of the com-
plaint would defeat the rights of Campbell and De Lan to the
attorneys' fees allowed them. Having settled their own mat-
ters, the parties have attempted surreptitiously and without
notice, to use this court to defeat the attorneys. From the
foregoing, the following conclusions necessarily follow:

1. The matters in controversy and the subject of the
litigation between the Coryells, Miss Fawcett and the com-
pany have been adjusted and settled between them, and the
errors, if any, occurring in the lower court, have become
moot; for whether the judgment be reversed or affirmed the
same result will follow from their agreement. When parties
have settled their differences there remains no real controversy
or live question concerning the matters that the litigation was
about. If parties dispose of the subject matter of litigation
there remains no matter to litigate. Under such circum-
stances, a writ of error will be dismissed.—*People v. Hall,* 45
Colo. 303; 2 Cyc. 533; 3 Cyc. 188.

2. The parties did not intend that any of the errors as-
signed should be reviewed in this court. The confession of
errors was made before the case was lodged here, and then
filed at the same time that the transcript was filed and the case

docketed, and the confession was made without regard to the merits of the alleged errors. As no review was ever intended the writ of error was not sued out in good faith. The purpose of a writ of error is to obtain a *bona fide* review of a judgment of a lower court and when such a writ is sued out, not for the purpose nor with the intention of having a *bona fide* review, but for some other and ulterior purpose, foreign to the purpose of appellate jurisdiction, it cannot be said to save been sued out in good faith, nor that the appellant jurisdiction has attached. Such a proceeding is a pretense and a sham and can not give parties any standing.

3. The evidence before us, circumstantial and otherwise, indicates that the parties endeavored to defeat Campbell and De Lan of their attorneys' fees. For the accomplishment of that purpose, the parties hit upon the plan of pretending to institute proceedings in error in this court, and, by confessing error as to matters concerning themselves and over which there was no longer any controversy, secure a reversal of the judgment and a dismissal of the complaint. It was not intended to have a real review of the question of the allowance of attorneys' fees. The proceeding was resorted to for ridding the company and the Coryells of the attorneys' fees allowed, and leaving the attorneys to look for payment for their services to their client, who confessed that she was going into bankruptcy. It is certain that Campbell and De Lan were led to believe, and confirmed in the belief by all the parties, plaintiff and defendants, that Miss Fawcett was a stockholder in the company, and as such prosecuted the action, which, through the work of the attorneys, resulted in a very substantial judgment in favor of the corporation. Certain it is that these attorneys were and are entitled to just compensation from some one. In the final disposition of the controversy, fair dealing required that they be considered, consulted and given an opportunity to protect their rights, whatever they may be. The manner in which it was sought to do away with the rights of these attorneys was a fraud upon them,

and the use of the forms of review, for the purpose of completing that fraud, was an imposition upon this court. This court has the right and it is its duty to protect itself from imposition and from being used as an instrument for the accomplishment of a designed wrong, by parties who invoke its jurisdiction in bad faith. To retain this pretended proceeding in error in this court would be to condone wrong and to say that parties have the right to impose upon courts and use them for illegitimate purposes.

The least that should be done under all the circumstances as recited is to leave the parties in the situation in which they had placed themselves before they pretended to invoke the jurisdiction of this court. That can be accomplished by striking the confession of errors and dismissing the writ of error, and the same is accordingly done.

*Writ of Error Dismissed.*

Decision *en banc.*

Mr. JUSTICE WHITE dissents.

Mr. JUSTICE WHITE dissenting:

I can not agree to a dismissal of this suit, at this time, upon the record as it now is. To do so affirms the judgment in every particular and, as I believe, deprives, at least, two of the plaintiffs in error of a constitutional right.

Pauline M. Fawcett prosecuted a stockholders' suit against The Garfield County Coal and Fuel Company and Perry C. Coryell and Minnie B. Coryell, a majority of the members of its board of directors. Upon final hearing a decree was entered requiring Minnie B. Coryell to convey to the coal company certain lands of the value of $50,000, which she claimed at her own; that she likewise pay to the company $20,474 in money; that Perry C. Coryell pay to the said company the sum of $1,000. It was further adjudged in the decree that the company pay to D. M. Campbell and S. J. De-

Lan, who had represented the plaintiff in the prosecution of the suit, the sum of $2,500 as attorneys' fees therein, and a receiver was appointed to take charge of the property and carry on the business of the company.

March 14, 1912, the company, Minnie B. Coryell and Perry C. Coryell, as plaintiffs in error, presented a transcript of the record and docketed the cause in this court on error, being represented therein by the same attorney that represented them in the trial court. On the same day Pauline M. Fawcett, the defendant in error, through an attorney of this court, H. J. O'Bryan, filed a confession of errors and consent that the judgment be reversed and annulled, and that a judgment be entered in this court dismissing the complaint. Plaintiffs in error thereupon applied for a supersedeas, and, at the time of the hearing thereof, the confession of errors was brought to the attention of the court. Upon an inspection of the record, it appearing that the decree ordered the payment by the coal company to Messrs. Campbell and De Lan of a certain sum as attorneys' fees, it was thought wise, before taking action in the premises, to advise them of the confession of errors filed, which was done. Thereupon Messrs. Campbell and De Lan, by telegram, and subsequently by letters, entitled in the cause and addressed to the clerk of this court, protested against the acceptance of the confession of errors and the disposition of the cause thereon, claiming to be the attorneys authorized to act for the defendant in error. Within two or three days thereafter, defendant in error, in her own proper person, presented for filing in this court a paper, entitled in the cause, wherein she denied the authority of Campbell and De Lan, or either of them, to represent her in the suit in this court, declaring that they had no right or authority to appear for her in said cause in any way, and that H. J. O'Bryan was her attorney therein. Thereupon this court, of its own motion, appointed a commissioner to take testimony with reference to the preparation and filing of the confession of errors, but in no wise designated the witnesses

to be examined, or the scope of the inquiry. The witnesses
examined were E. L. Clover, attorney for plaintiffs in error;
Pauline M. Fawcett, defendant in error; Henry J. O'Bryan,
the attorney representing her in this court; Perry C. Coryell,
one of the plaintiffs in error; D. M. Campbell and S. J. De
Lan, the attorneys who had represented defendant in error in
the court below, and J. D. Fillmore, a clerk in the office of S.
J. De Lan.

Plaintiff in error, Minnie B. Coryell, neither testified, nor
does the record disclose that she was present at, the hearing
before the commissioner. Moreover, contrary to the state-
ment in the opinion, it does not appear that the Coryells and
Miss Fawcett had various meetings, conversations and nego-
tiations, and had reached a conclusion whereby the rights of
the Coryells, the company and Miss Fawcett were settled and
the matters in litigation adjusted. The only meetings, con-
versations and negotiations that were had, if any, were be-
tween Perry C. Coryell and Miss Fawcett, and there is no evi-
dence that Minnie B. Coryell was in any wise apprised thereof.
Besides, the testimony is positive that nothing whatever was
paid or promised Miss Fawcett as a consideration for the
filing of the confession of errors. Her testimony is specific
that she was prompted thereto solely by reason of the produc-
tion and inspection of a forgotten letter written years before,
wherein she had sold and placed in trust for delivery the
shares of stock in the company which she had, prior to the
determination of the suit, believed she owned and which trust
had been carried out according to its terms. The testimony
of Perry C. Coryell is to the same effect, and there is none
of a direct nature to the contrary. If this court, upon evi-
dence taken for the purpose of ascertaining the relation of at-
torneys to a confession of errors filed, disregards the positive
testimony of two of the interested parties to a suit, and, from
inferences only, finds that the cause was settled as between
the two, it surely can not properly extend that finding to an-
other party to the suit who was neither a witness heard

therein, nor apprised that the inquiry would extend to the question of whether or not a settlement of the litigation had been made. Therefore, the court can not, it seems to me, consistent with the rules of procedure and the principles of justice, foreclose the constitutional right of Minnie B. Coryell, at least, to have the enormous judgment entered against her reviewed by writ of error in this court. It is said that the only reason for lodging the case here was the belief of the parties that a reversal of the judgment and the dismissal of the complaint would defeat the rights of Campbell and De Lan to the attorneys' fees allowed them. If it be true that some of the parties so intended, the record certainly does not disclose, even by inference, that Mrs. Coryell shared in such intent or had knowledge thereof.

It is asserted, presumably to show that no harm will follow an affirmance of the judgment by dismissal of the writ of error, that Mrs. Coryell is the owner of all the capital stock of the corporation, except two shares held by Perry C. Coryell and Perry C. Coryell, Jr., and that the Coryells constitute the board of directors, and the company has no debts. If the statement, as to the ownership of the stock, control of the corporation and its freedom from indebtedness, be true, it in no sense changes the situation nor removes the probability of grave injustice being done the Coryell judgment debtors. The record shows conclusively that forty-five thousand (45,-000) shares of the capital stock, being all thereof except five thousand (5,000) shares claimed at the time of the suit by Miss Fawcett, are in the possession of a bank as collateral security upon an indebtedness to the bank of some person or corporation not disclosed. Suppose the payment of such indebtedness is defaulted? Thereupon the bank resorts to the collateral security and sells the shares of stock. It would necessarily follow that the new holder of the stock could force payment into the treasury of the corporation of the judgments against the Coryells, affirmed by the dismissal of this writ of error.

Moreover, I am not convinced that the record is conclusive that the corporation is not indebted at the present time. It shows that several years ago all indebtedness was paid, but not the negative of subsequent indebtedness. Whatever the condition of the corporation was then, does this court know its condition now? Besides, the record shows that the concern is now in the hands of a receiver authorized to carry on its business, to incur indebtedness, to collect money and property due the company, and to make distribution thereof. But, let us suppose, at this time, there are no debts of the corporation, that the Coryells own all the stock, that the receiver is discharged and the Coryells, as a board of directors, cause the corporation to satisfy of record the judgments involved in this suit. Thereupon the stock passes into the hands of others, or the corporation becomes financially involved. Is it at all certain that the new holders of the stock, or the creditors of the corporation would be precluded from forcing the payment of the judgments in question, or a surrender to the corporation of the property claimed herein by Mrs. Coryell? If the property which she holds and claims as her own actually belongs to the corporation, as adjudged by the decree herein affirmed, would it not seem that whosoever acquired ownership of any portion of the capital stock of the company could force a reconveyance of such property to the corporation from one who had been released from such obligation without consideration, by an act of the corporation which was, at the time of the release under the full control of the person released?

But were we to assume that all the parties to the litigation participated in the acts and things which, in the opinion of the court, constitute a settlement of the litigation, it would not, in my judgment, warrant a dismissal of the writ of error. Substantial judgments actually exist against two of the plaintiffs in error. There is no claim that these judgments have in any wise been satisfied or discharged. The only claim is that Miss Fawcett was satisfied in some way. Neither should the writ be dismissed, though it be true that one of the purposes

thereof, in conjunction with the confession of errors, was to deprive Campbell and De Lan of that which was their just due. Their fees were earned in the trial court, not in this. The proceedings here constitute a new suit and the employment of attorneys in the court below does not constitute them attorneys in the proceedings here. It is quite true that attorneys should be paid for their services, and Campbell and De Lan are entitled to theirs, and may receive them in a proper proceeding either in the court below, or, perhaps, by intervention in the proceeding here. If the allegations of the complaint and the admissions of the answer disclose a certain state of facts, and these attorneys have rendered services justly chargeable under such facts, to the corporation itself, it would necessarily follow that the corporation would be estopped, as between itself and the attorneys, from denying the existence of such facts. A reversal of the judgment would send the matter into the district court, possessed of full jurisdiction in the premises, where all parties could be heard and the matter properly adjusted.

But it is said that the writ of error is not prosecuted in good faith; that its purpose, together with the confession of errors, was to secure a reversal of the judgment and a dismissal of the complaint, and that it was unnecessary to bring the case here, as that could have been accomplished in the district court, or at least a settlement therein made. If it is meant by this, that the district court could have rendered the relief a judgment of reversal would afford, a sufficient answer thereto is, that the term of the district court, at which the decree was entered, had expired prior to the time that Miss Fawcett concluded that she was in the wrong. The district court was, therefore, powerless to set aside, change or modify its decree in any particular. Again, how could a settlement have been made in the district court? The Coryells constituted the board of directors of the corporation. The judgments are against them and in favor of the corporation. Under these circumstances, it is probable that neither the Cory-

ells nor the corporation itself could safely discharge or satisfy the judgments without payment thereof. Nor is it certain that Miss Fawcett possessed that power. She was, in legal effect, a trustee for the corporation, suing for herself and those similarly situated. However, were we to assume that the entire matter could have been adjusted in the district court, because it was not, is this court to dismiss the writ of error, thereby affirm the judgment, and thus impose upon the Coryells a payment aggregating over $71,000 in money and property which they claim they do not owe? Would it not be wiser and more consonant with sound judicial procedure to reverse the case and let the entire matter be inquired into where all parties may be heard, a full inquiry had, every one's rights protected and substantial justice done?