### No. 8934.

### CORYELL ET AL. *v.* NAPIER, RECEIVER.

1. APPEAL AND ERROR—*Judgments not Supported by the Evidence.* A judgment resting upon a finding of fact not supported by the evidence will be reversed.

2. FRAUD—*Pleading.* A general allegation of fraud, e. g., that an acquaintance was obtained "by fraud and misrepresentation", stating no particulars, is not sufficient in law.

So as to fraud and misrepresentation, alleged to have been practiced upon the court, in obtaining a judgment.

3. RECEIVER—*Rights of.* A receiver has no greater right than the person or corporation over whose estate he is appointed.

*Error to Garfield District Court, Hon. John T. Shumate, Judge.*

Mr. JOHN L. NOONAN, Mr. J. W. DOLLISON, Mr. HARRY S. SILVERSTEIN, for plaintiffs in error.

Mr. EDWIN C. KINGSBURY, Mr. J. W. KELLEY, for defendant in error.

Garrigues, J.

THE Garfield County Coal and Fuel Company, a close corporation, was organized in 1901, with a capital stock of 50,000 shares, 5,000 of which were issued September 28, 1901, to one Pauline Fawcett, the remainder being owned by Perry and Minnie Coryell, save enough shares to qualify directors. December 4, 1909, Fawcett commenced a stockholders' suit at Glenwood Springs, in the District Court of Garfield County (being No. 1401 in that court and No. 7763 here), for an accounting, against the Coryells who had control of the handling of the affairs of the company, in which the fuel company was joined as defendant. In this suit she alleged she was the owner of 5,000 shares of the capital stock; that the Coryells had mismanaged the company's affairs, and appropriated large amounts of its property and money to their own use, and she sought to recover a judgment against them on that account, in favor of the company. In this suit the court found that she was the owner of the stock as she claimed. An accounting was had before a referee, and April 24, 1911, the court entered a decree—spoken of as the McCall judgment—requiring Minnie Coryell to deed certain real estate, standing in her name, to the company, and entered a personal judgment against her for $20,475.65 in favor of the fuel company, a

personal judgment against her husband for $1,000 in favor of the fuel company, also a money judgment for $2,500 against the fuel company in favor of De Lan and Campbell, as attorneys' fees, for them as Fawcett's attorneys in prosecuting the suit against the Coryells. The court also issued an injunction against the Coryells, and appointed one George Edinger as receiver of the fuel company. The Coryells brought the case here for review on error, and March 29, 1912, we granted a supersedeas, and a bond in the sum of $30,000 was filed the next day. (See *Coryell v. Fawcett,* 54 Colo. 353, 130 Pac. 838.)

Fawcett was indebted to Minnie Coryell upon various promissory notes, upon which the latter brought suit (being case No. 1655 in the District Court), and in July, 1913, Fawcett confessed judgment in this suit on the notes, and judgment was entered against her in favor of Coryell in the sum of $7,809.15. November 15, 1913, certain judgment creditors of Fawcett brought suit in the District Court (being No. 1684 below and No. 8951 here) against the Coryells to cancel and set aside this judgment, and to procure the appointment of a receiver to take charge of the property of Fawcett. After a trial in that case, the court entered a decree therein, cancelling the judgment by confession and appointing B. T. Napier, defendant in error in this case, receiver of the property and effects of Fawcett. On review we reversed that portion of the judgment cancelling the judgment in favor of Coryell, but allowed the portion of the decretal order appointing Napier receiver, to stand. (See *Coryell v. Olmstead,* — Colo. —, 172 Pac. 14.) It was by virtue of this appointment that Napier as receiver, instituted the instant case.

January 23, 1914, Napier as receiver, brought the instant suit (being No. 1702 in the lower court and No. 8934 here), against Perry Coryell, Minnie Coryell, The Garfield County Coal and Fuel Company, C. C. Parks as President of the First National Bank of Glenwood Springs, and the bank.

A preliminary statement here will materially assist in an understanding of the case.

About January 18, 1904, Perry Coryell went to Fawcett's house to see her about the company's finances which were in bad condition. Among other liabilities, it owed one Brandenburg some $10,000 borrowed money, represented by notes upon which the Coryells and Fawcett were personally liable. Not finding her at home, he tied a note on the door knob which stated in effect, that if she did not care to contribute her proportional share toward the payment of the company's debts, that they, the Coryells, would assume and agree to pay all the company's liabilities if she would assign her 5,000 shares of stock in trust to Parks, to be by him turned over to them when they had paid the debts of the company, and relieve her from all personal liability; that she might take her choice of either contributing her proportional part of the company's liabilities, or assign her stock to them, and they would pay the debts, or have a receiver appointed, and the affairs of the company wound up. To this letter Fawcett replied two days later as follows:

"January 20th, 1904.

Mr. P. C. Coryell,
Dear sir:

I have received your letter of recent date concerning the financial condition of the mine. I find my own affairs are such that I cannot do anything toward helping out financially. But, if it will be agreeable to you as you suggested, I will turn over to C. C. Parks, to be held in trust by him, my shares in stock, if you will free me from my obligations on account of the mine. These shares to be turned over to you when you have freed me from personal obligations.

Very truly,

Pauline M. Fawcett."

July 25, 1904, to accomplish the purpose expressed in the letter, she assigned and delivered the stock in trust to Parks, in the following words:

"For value received I hereby sell, transfer and assign to C. C. Parks in trust, five thousand the shares of stock within mentioned and do hereby constitute and appoint _____ my attorney irrevocable by me and in my name to transfer the same on the books of the company with full power of substitution in the premises.

Witness my hand and seal this 25th day of January, A. D. 1904.                    Pauline M. Fawcett."

The Coryells then pledged all the stock to the bank from which they borrowed the money, and paid up all the obligations, debts and liabilities of the fuel company, by which Fawcett was released from any further liability thereon, and March 30, 1912, Fawcett wrote the bank in the following letter to deliver the stock to Coryell.

"Newcastle, Colorado, March 30, 1912.

Mr. C. C. Parks.

Dear sir:

Will you kindly write Mrs. Minnie B. Coryell's name in the proper blank space on the back of the certificate of stock of the Garfield County Coal & Fuel Company which you hold in trust for me, and send the same to her; let me know if you do so, and if she receives it.

Thanking you for the favor, if granted, I am,

Very truly,

Pauline M. Fawcett."

These matters seem to have been forgotten at the trial, but were set out as newly discovered evidence in support of a motion for a new trial in case No. 1401, to resist which Fawcett filed a counter affidavit in which she denied receiving the note or letter from Coryell, or of writing the letter dated January 20, 1904, or of assigning the stock to Parks January 25, 1905, or of writing the letter dated March 30, 1912. In short, she denied the whole transaction set out in the motion for a new trial. The trial court overruled Coryells' motion and they brought the case here for review on error. Fawcett, who had in the meantime discharged De Lan and Campbell, and em-

ployed new counsel, voluntarily entered her appearance here March 14, 1912, and waived the issuing of a writ of error, and joined in the assignments of error, and confessed error, in which, among other things, she admitted that the court erred in overruling Coryell's motion for a new trial; that it erred in finding and deciding that she was a stockholder in the fuel company; that she was not such a stockholder, and was not entitled to an accounting; that the court should have granted a new trial, and erred in holding that she was a stockholder, or had any interest in the corporation, and asked us to enter a final judgment directing a dismissal of her complaint.

Had we dismissed the writ at that time, at her request, on her confession of errors, the cause would likely have been dismissed in the lower court, and De Lan and Campbell probably would have lost their judgment for attorney's fees. So, before acting, we notified them of the situation. Thereupon they appeared and resisted the dismissal of the case, and claimed that since the trial, Coryell and Fawcett had fraudulently conspired together to reverse the judgment in favor of Fawcett, for the purpose of cheating and defrauding them out of their attorneys' fees, and they moved to strike the petition for a supersedeas, and the confession of errors, from the files. March 29, 1912, we entered an order that the judgment in the case be stayed upon the filing of a supersedeas bond by plaintiff in error in the sum of $30,000, which bond was given the next day. April 18, 1912, we appointed a commission to take testimony in reference to the preparation and filing of the confession of errors by Fawcett. April 22, 1912, her evidence was taken before the commission, and in substance is to the effect, that De Lan and Campbell were no longer her attorneys, but that she had employed other counsel to represent her in the case before the Supreme Court. She said: I told him, Coryell, that I was in the wrong. That I had found the stock had been delivered; that I endorsed it in trust under certain options not on the stock, and put it in the possession of Parks. That the letter, which I was

trying to get hold of, had been discovered. I had written a letter (referring to the letter of January 20, 1904), it was in my handwriting; I was wrong. I told Coryell I was wrong. I told my attorneys I was wrong, and would never go into the Supreme Court. I told them to go no further. I quit the case because I was in the wrong, and was not going to pay another dollar when I knew I was in the wrong. If I had not been shut up by my attorneys, I would not be here now. After the stock was produced, I didn't want to go on with the trial. I told Parks I had no rights in the fuel company; now is the time to know it; I was mistaken, and I admit it. I have been sorry ever since I signed the affidavit resisting the motion for a new trial. I hesitated a long while before I signed it. I read the confession of errors over carefully before swearing to it, because I had sworn to one paper, and I was sorry for it, and I was careful after that. I have not the least thing in the world to do with the stock, and no interest in it. I was in the wrong. If I had told it three years ago, I would not be here tonight. I always expected the thing to jump up like a ghost from behind. I quit because I was in the wrong of it. I signed the confession of errors because I wanted the case out of the Supreme Court because I know it to be right and just to do it. The affidavit I signed was not correct. I hesitated a long time before I signed it, and was sorry afterwards I did not take it out.

January 13, 1913, we dismissed the writ of error because, as we stated, after Fawcett filed her confession of errors and admitted she was not a stockholder, there was no longer any controversy between them. We thought it unnecessary for them to bring the case here to effect a settlement, and suggested that in so far as the rights of the parties were concerned, the settlement should be accomplished in the District Court. The parties then, through Judge Cavender, sitting for Judge Shumate, settled and adjudicated everything in the case and fully satisfied the judgments, paid all the costs, and the judgment of De Lan and Campbell for attorneys' fees, which with interest,

amounted to $3,031.22, and the court April 16, 1913 entered a final order and decree, and a final discharge.

The Coryells, under permission first obtained from the court, sold a tract of land to one Kelley for $3,200 cash, which was used in paying the De Lan and Campbell judgment; and sold another tract to one Prendergast for $5,100, for which a note and mortgage were taken. This note, together with the 50,000 shares of the fuel company's stock, in fact everything which the Coryells had or owned, was hypothecated to the bank, from which money was borrowed to settle up the McCall judgment, and costs, in case No. 1401. The suit had been ,very expensive to the litigants, just the receiver's costs and fees alone, amount to $731.41. To perfect the settlement, a meeting of all the stockholders of the fuel company was called and held, at which the proper officers were, by resolution, authorized and instructed to enter satisfaction and discharge of the judgment entered in favor of the company against the Coryells. In accordance with this resolution, the acquittance of the fuel company, duly made and acknowledged, was filed in court April 16, 1913, at the time the matter came on for final hearing before the court, upon the application of the Coryells for a clearance of the judgment entered April 24, 1911, and for the discharge of Edinger as receiver of the fuel company. The Coryells were, by order of court, allowed to make such conveyances of property as they might desire, to obtain funds to meet all the expenses and costs, notwithstanding the restraining order of April 24, 1911, but the order then entered, provided that it should in no wise prejudice or affect Fawcett, unless she should voluntarily and of her own accord release all rights which she had or held under the decree; and that upon paying the De Lan and Campbell judgment, and all the costs, and obtaining a release from Fawcett, and the fuel company, it was ordered that the Coryells should be discharged from the judgment, the court order stating that the judgment was made final and complete, for the purpose, among other things, of be-

ing filed in the recorder's office, as a release and discharge from the decree of April 24, 1911, and it was so filed.

Fawcett's release and acquittance, duly acknowledged by her, was obtained and filed the next day pursuant to the decree, and all parties connected with the old suit, No. 1401, were paid off, and all judgments, costs and claims satisfied and discharged in full, and releases, receipts and acquittances were duly filed with the sanction and approval of the court.

The amended complaint, filed April 1, 1914, recites the judgment in the old case No. 1401, wherein the fuel company obtained a personal judgment against Perry Coryell for $1,000, and against Minnie Coryell for $20,475.65, and Minnie Coryell was decreed to convey certain land to the fuel company, and Fawcett was declared to be the owner of 5,000 shares of stock in the fuel company, represented by certificate No. 19. It alleges that the fuel company had received large royalties of which Fawcett had received nothing, and that the Coryells had sold land to Prendergast and to Kelly, of which Fawcett had received nothing; that Fawcett's release and acquittance was obtained by fraud and false pretenses; that the final order of court entered April 16, 1913, by Judge Cavender, was obtained by fraud and false representations; that an accounting was necessary to determine how much defendants were indebted to Fawcett on the judgment, and that it was necessary to appoint another receiver of the fuel company in place of the one discharged.

The prayer of the complaint was to the effect that the acquittance of Fawcett, and of the fuel company, and the final order of court and discharge in case No. 1401 entered April 16, 1913, all be set aside; that Parks and the bank be required to surrender the 5,000 shares of stock belonging to Fawcett; for an accounting and the appointment of another receiver for the fuel company, and for another injunction.

May 8, 1915, the lower court in the instant case, made a finding of fact that the 5,000 shares of stock represented

by certificate No. 19, issued to Fawcett, were still the property of Fawcett, and had only been assigned to Minnie Coryell for the purpose of assisting her in obtaining a supersedeas bond in case No. 1401. Based upon the finding that she still owned the stock, the court found and held that Fawcett's acquittance was without consideration and void, and was given in accordance with and to embrace her confession of error in the Supreme Court, in which the judgment in her favor was affirmed, notwithstanding her confession of error; that the release or satisfaction of judgment filed by the fuel company April 16, 1913, at the time of making the final order and discharge of that date, was not made in good faith and is void, because Fawcett as a stockholder, was not notified of the meeting, and did not participate therein; that the final order of court entered by Judge Cavender April 16, 1913, should be set aside and held for naught, except that portion discharging the receiver and appointing another receiver for the fuel company, and that a restraining order issue. Judgment was entered accordingly and Napier, who as receiver of Fawcett brought the suit, was appointed receiver of the fuel company, whereupon the Coryells prosecute this writ of error to review the action of the trial court.

GARRIGUES, J., after stating the case as above:

The purpose of the action is to revive or reinstate the old judgment of April 24, 1911, in case No. 1401, and for an accounting. The judgment below was based upon the erroneous theory that Fawcett owned 5,000 shares of the fuel company stock. The complaint alleges the stock had been assigned in trust to Parks for the purpose of transfer, in case the property was sold, in which event Fawcett was to receive $5,000 in money; that the trust terminated because there was no sale of the property, but that Parks did not return the stock, which Fawcett still owned. The court found the stock had been assigned to Parks to assist the Coryells in obtaining an appeal from the judgment entered in favor of Fawcett against them April 24, 1911, although, as appears from the record, the assignment was seven

years before, to-wit, January 25, 1904, and the purpose of the assignment having been completed, the court found that the stock was the property of Fawcett.

The evidence does not support either position. Plaintiff sued as receiver of Fawcett, and the basis of the action is her ownership of the stock; if that fails, the whole case fails. The complaint pleads the judgment of April 24, 1911, in favor of Fawcett against the Coryells, and seeks to have the acquittance filed by Fawcett, the acquittance of the fuel company and the final order and discharge entered April 16, 1913, vacated and set aside, and the old judgment reinstated. The answer pleads the acquittance of Fawcett and of the fuel company, and the clearance of the Coryells by the final order and discharge. The replication alleges generally that Fawcett's acquittance was obtained by fraud and false pretenses, and that the fuel company's acquittance was obtained by fraud and misrepresentation. There is no cause of action stated in the complaint that is not embraced in the final order entered by Judge Cavender April 16, 1913. The judgment in the case at bar follows the finding of the court, that Fawcett still owned the stock at the time of the trial, and of course, that being erroneous the judgment can not stand.

When case No. 1401, being No. 7763 here, was docketed on error March 14, 1912, Fawcett voluntarily entered her appearance and filed a confession of errors duly acknowledged and signed by her, in which she stated that she was not a stockholder, had no interest in the fuel company, and asked us to order a dismissal of the complaint. She went before the commission in that case appointed by us, and testified unequivocally that she was not a stockholder in the fuel company.

The final order and discharge entered April 16, 1913, provided that Fawcett should not be bound thereby unless she voluntarily and of her own accord released all rights she might have under the decree of April 24, 1911. Thereupon the next day she made, signed, acknowledged and entered of record her acquittance, *inter alia* as follows:

The undersigned, Pauline M. Fawcett, plaintiff, hereby releases and discharges the defendants and each of them from all demands, claims or benefits, accrued or to accrue, under and by virtue of the decree made and entered April 24, 1911; this acquittance being in accordance with and embracing my confession of error in the Supreme Court of the State of Colorado."

The receiver of Fawcett is in no better position than Fawcett, and to allow a judgment to stand upon the face of this record, based upon the theory that Fawcett is still the owner of this stock, would reflect but little credit upon the courts.

The erroneous finding of the court that Fawcett owned the stock, naturally caused it to reach another erroneous conclusion, that she was entitled as a stockholder, to notice of the stockholders' meeting held April 29, 1912, for the purpose of directing the officers of the fuel company to make and acknowledge the acquittance, and that all the stock was not present and voting at this meeting. The decree setting aside the acquittance of the fuel company is based upon the erroneous finding that this was not a legal stockholders' meeting and therefore was not the action of the fuel company, because Fawcett was the owner of 5,000 shares of stock April 29, 1912, when the meeting was held.

The complaint alleged generally, fraud and false pretenses which induced Fawcett to sign the acquittance. The allegations and proof required with regard to false representations inducing another to act, are well understood, and need not be repeated. This case comes far short of the mark both in the pleading and proof. Also the allegation of fraud and misrepresentation practiced upon the court to induce it to sign the final decree of April 16, 1913, is a mere general allegation of which there was no proof whatever. The record shows that the court was familiar with the situation and fully protected the rights of all parties; that the final order of court was freely and voluntarily complied with in good faith by all the parties, including Fawcett, and the judgment in the case at bar, up-

setting all that had been done, can not be permitted to stand.

The judgment is reversed and the cause remanded with directions to the lower court to dismiss the complaint.

*Judgment reversed.*

Chief Justice Hill and Mr. Justice White concur.