[Civil No. 2725.   Filed May 14, 1928.]

[267 Pac. 412.]

A. M. CRAWFORD, Member and Speaker of the House of Representatives of Arizona, Appellant, v. A. H. FAVOUR, FRED SUTTER, THOMAS W. DONNELLY, B. H. GIBBS, NELLIE T. BUSH and HARRY E. PICKETT, Constituting the Code Committee of the Eighth Legislature of the State of Arizona, Appellees.

14

Mr. J. H. Morgan, for Appellant.

Mr. A. H. Favour, for Appellees.

LOCKWOOD, J.—In 1927, the eighth legislature passed a law establishing a Code Committee (Laws 1927, 4th Sp. Sess., chap. 31) whose duty it was, among other things, to prepare legislative bills with appropriate titles covering the various parts of a proposed new Code of Laws for the state of Arizona, for submission at some future session of the legislature. The members of that committee are the defendants in this case. Some time thereafter a complaint was filed in the superior court of Yavapai county by A. M. Crawford, who was and is the Speaker of the House of Representatives of the eighth legislature, reciting the appointment of the Code Committee, and then alleging as follows:

"That the said law creating the Arizona Code committee imposed on said committee the duty of preparing the legislative bills from the laws as revised and codified by the said commissioner, with appro-

priate titles, for submission at a regular or special session of the Legislature, before which the said revision and codification will come for consideration.

"IV. Section 13, pt. 2, art. IV, of the Constitution of the state of Arizona, provides as follows:

" 'Section 13. Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.'

"V. Plaintiff is informed that it is the purpose of the Code committee to prepare the legislative bill for introduction, and to prepare for each proposed bill an appropriate title, which said bills will be submitted to a special or regular session of the Legislature for consideration.

"VI. Plaintiff is further informed that there will be approximately from 150 to 200 separate bills.

"VII. It is necessary for the Code committee to determine as a preliminary to the preparation of said bills what title must be given to each proposed bill, and it is necessary that this court, under the authority given in the act known as Uniform Declaratory Judgments Act, adjudge and decree what must or should constitute a title to the proposed bills.

"Wherefore this plaintiff prays that this complainant's status under the laws of 1925 and 1927 as herein referred to be defined, and that said laws be construed, and that the defendants may be required under said Declaratory Judgments Act to submit to the court their plan for said bills, to the end that there may be a ruling by the court and no question of constitutionality may hereafter arise with respect to the laws that may be passed as aforesaid."

The defendants answered, admitting all the allegations of the complaint, and then set up their plan of procedure as follows:

"That your Code committee will submit the same in separate bills, each bill containing all of the laws relating or pertaining to any one subject; that

it has been estimated that the number of these separate bills will run from 150 to 200. Your committee plans, for example, to submit in one separate bill all laws relating to the Legislature, which will include the laws pertaining to meeting and organization of the Legislature, contesting the election of members of the Legislature, contempt, attendance of witnesses, and the acts of the Legislature and their approval or veto, and to give the said bill a title as follows: 'An act to revise and codify the laws relating to the Legislature.'

"Your committee further proposes to treat all of the laws as revised and modified, pertaining to cities and towns, including the following subheads: Reincorporation under boards of trustee government, incorporation under common council government, incorporation under charter government, officers of cities and towns, publication of proceedings and ordinances, general powers of cities and towns, extension of corporate limits and platting adjacent subdivisions, sale of property by municipality, registration of voters and elections, public utility franchises, police courts, public library, slaughter houses, zoning districts, the opening, widening, and closing of public ways, public improvements by special assessment and investment bonds, under the one title of 'Cities and Towns,' and that the title of said act will be as follows: 'An act to revise and codify the laws relating to cities and towns.'

"Your committee further proposes to treat the subject of elections in a similar manner and that all subjects having to do with 'elections,' which cover time of holding and calling elections, qualifications and registration of electors, election precincts, boards of election, ballots and instructions to voters, conduct of elections, poll lists and tally lists, canvass and return by election board, canvass by board of supervisors and by secretary of state and certificate of election, primary elections, special elections to fill vacancy in Legislature, absentee voting, publicity of campaign expenses, and election contests, shall be submitted in one proposed bill, with a title as follows: 'An act to revise and codify the laws relating to elections.'

"III. It is further the purpose and intent of your Code committee in preparing the bills as directed by the act under which they are appointed and acting, to take the entire work of the Code commissioner and to separate it into subjects, and under each one of these subjects to include all the laws pertaining or relating thereto, and in each case to give the bill a title similar to those of the three preceding and set out here by way of illustration, namely, 'An act to revise and codify the laws relating to that particular subject.'"

The answer then asserted such procedure complied with section 13, part 2, article 4, of the Constitution, and prayed that the court render judgment to that effect. The matter was heard before the superior court of Yavapai county and judgment was rendered as follows:

"That the Code committee created and acting under the authority of the law, which became effective November 17th, 1927, passed by the Fourth Special Session of the Eighth Legislature of the State. of Arizona, known as Senate Bill No. 8, would comply with said law in the preparation of the legislative bills revising and codifying the complete body of laws of Arizona by making separate bills, each covering one subject with titles setting out 'An act to revise and codify the laws relating to,' and here insert the subject, and the Legislature would comply with the requirements of section 13, pt. 2, art. IV, of the Constitution of Arizona, and the law above referred to, if such bills were enacted into law.

"III. That the laws if passed by separate acts, each act to comprise and include the laws relating to a particular subject, would be a sufficient compliance with section 13, pt. 2, art. IV, of the Arizona Constitution, if the title to said act set out that it is an act to revise and codify the name of the subject, to wit, elections, Legislature, cities and towns,. or any other subject as the case may be, and whenever the subject includes a penalty or a forfeiture, then by adding after the subject matter the words,

'And to provide for a penalty or a forfeiture for the violation of certain provisions thereof.' ''

The case was then brought before us by way of appeal for final decision.

It is obvious from what we have just stated that this is not in any sense a real suit or controversy between two parties having opposing interests in any matter, but is in effect a request that this court advise the legislative department of the state of Arizona how to prepare certain laws before their passage so that they will comply with the provisions of section 13, part 2, article 4, of the Constitution. In England similar requests have been made of the judiciary from time to time, and the judges have complied with them. There, however, the Parliament is supreme, and the rule that the three co-ordinate departments of government, the legislative, executive, and judicial, have equal authority, and cannot encroach on each other, so familiar to us, is unknown. In Arizona, by the express language of article 3 of our Constitution, none of these departments may exercise the powers of another one, and advice of this kind is ordinarily an executive and not a judicial function.

It is contended, however, by appellee, that chapter 10 of the Session Laws of 1927, known as the Declaratory Judgments Act, authorizes and directs the court to comply with plaintiff's request. We have examined the text of the act carefully, and find no provision to that effect. The sections thereof stating the circumstances under which the power conferred thereby may be exercised read as follows:

"Section 1. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is

prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

"Section 2. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

"Section 3. A contract may be construed either before or after there has been a breach thereof.

"Section 4. Any person interested as, or through, an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or *cestui que trust* in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto;

"(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others; or

"(b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

We think no power like that contended for by the parties to this action is conferred or attempted to be conferred by the act, and that, if it were, the statute in so far would be unconstitutional.

A like issue has been before the Supreme Court of the United States in the case of *Muskrat* v. *United States*, 219 U. S. 346, 55 L. Ed. 246, 31 Sup. Ct. Rep. 250. In discussing an act of Congress which was claimed to impose a duty upon the federal courts somewhat similar to the one it is urged is imposed upon our courts by the Declaratory Judgments Act, the opinion says:

"It is therefore evident that there is neither more nor less in this procedure than an attempt to provide for a judicial determination, final in this court, of the constitutional validity of an act of Congress. Is such a determination within the judicial power conferred by the Constitution, as the same has been interpreted and defined in the authoritative decisions to which we have referred? We think it is not. That judicial power, as we have seen, is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress relied upon by one or the other of such parties in determining their rights is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a 'case' or 'controversy,' to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts in fact to

no more than an expression of opinion upon the validity of the acts in question. Confining the jurisdiction of this court within the limitations conferred by the Constitution, which the court has hitherto been careful to observe, and whose boundaries it has refused to transcend, we think the Congress, in the Act of March 1, 1907, exceeded the limitations of legislative authority, so far as it required of this court action not judicial in its nature within the meaning of the Constitution.''

We think the reasoning of that case conclusive. *Anway* v. *Grand R. Ry. Co.*, 211 Mich. 592, 12 A. L. R. 26, 179 N. W. 350; *Reply of Judges*, 33 Conn. 586; *Muskogee Gas & El. Co.* v. *Haskell*, 38 Okl. 358, Ann. Cas. 1915A 190, 132 Pac. 1098; *Horrabin* v. *Iowa City*, 160 Iowa 650, 130 N. W. 150, 142 N. W. 212; *Coryell* v. *Fawcett*, 54 Colo. 353, 130 Pac. 838.

In some of the states, it is true, the Constitutions provide that the legislative or executive departments may request advice from the Supreme Court on certain important questions; but no such clause can be found in the Constitution of Arizona. Even under such constitutional provisions, however, the opinions when given are regarded as expressing only the individual views of the justices, and not as a judicial determination by the court, and such opinions are not binding upon the legislative, the executive, or the judicial departments. Indeed, the justices do not act as a court in rendering them, but merely individually as the constitutional advisors of the other departments of government, exercising a function in most states imposed upon the Attorney General. *Opinion of Justices*, 126 Mass. 557; *State* v. *Cleveland*, 58 Me. 564, 572; *Green* v. *Commonwealth*, 12 Allen (Mass.) 155, 164.

But even were this court constitutionally authorized and required to give advice of this nature, it would be impossible on the case submitted to us to give any advice which would be of value or binding

effect. We are told in the answer that it is the intention of the Code committee to divide the Code into separate bills containing all the law relating to one subject and to give each of those bills a title showing that it contains the law relating to that subject, and that only. And we are asked to state in advance that any provisions which the committee may think properly included under such a title may constitutionally be placed thereunder. It is impossible for us to say, even if we had the jurisdiction to do so, whether a provision of the proposed Code not before us is properly embraced within any particular title or not. We have already held in a number of cases that, if the title of the act embraces but one general subject, any provisions properly connected with the principal subject expressed in the title may be constitutionally included therein. *Black & White Taxi Co.* v. *Standard Oil Co.*, 25 Ariz. 381, 218 Pac. 139; *State* v. *Davey*, 27 Ariz. 254, 232 Pac. 884; *Board of Control* v. *Buckstegge*, 18 Ariz. 277, 158 Pac. 837. In the absence of a specific bill containing both a definite title and definite provisions thereunder being submitted to us for our express consideration, under circumstances which give us jurisdiction to determine the particular question litigated, in the very nature of things, we could say no more than we have already said.

The judgment of the superior court of Yavapai county is reversed, and the case remanded, with orders to dismiss the same for want of jurisdiction to determine the question therein presented.

ROSS, C. J., and McALISTER, J., concur.